Filed 4/27/22  Max v. 8E6 Corp. CA2/1

# NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

## IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

## SECOND APPELLATE DISTRICT

## DIVISION ONE

| | |
|---|---|
| DAVID MAX,<br><br>   Plaintiff and Appellant,<br><br>   v.<br><br>8E6 CORP. et al.,<br><br>   Defendants and Respondents. | B307406<br>(Los Angeles County<br>Super. Ct. No. 19STCV11560)<br><br>ORDER MODIFYING<br>OPINION AND DENYING<br>PETITION FOR REHEARING<br>(NO CHANGE IN JUDGMENT) |

THE COURT:

The opinion in the above-entitled matter filed on March 29, 2022 is modified as follows:

1.     On page 4, the second to last sentence in the last paragraph on that page is deleted and replaced with the following:

An individual fraud cause of action would not require a bond, and no other issue raised in the demurrer would render it futile to permit Max leave to assert such a claim.

2.     On page 6, in the first sentence of the first paragraph of part A.3, the phrase "and a majority of the shareholders" is deleted.

3.     On page 22, in the first complete sentence at the top of that page, the phrase "the minority shareholders" is replaced with "other minority shareholders."

4.     Beginning at the bottom of page 27 through page 28, the following sentences and citation are deleted:  But the purported amended complaint does not allege fraudulent misrepresentations to all shareholders—only to minority shareholders like Max.  As such, Max need not plead reliance with heightened specificity in order to "stand out from the mass of stockholders who rely on the market." (*Id.* at pp. 184−185.)

Those deleted sentences and citation are replaced with the following sentences:

Reading the proposed allegations in the light most favorable to Max, it is unclear whether all misrepresentations on which Max relies were made to *all* shareholders or only to Max and/or some subset of the shareholders, and thus whether Max must meet the *Small* personal reliance requirement.  We express no opinion as to whether, with additional clarifying allegations, Max could establish this requirement does not apply or that it has been satisfied.  But in light of the currently proposed allegations, we cannot say that it would be impossible for Max to allege facts that make either of these showings, and thus that it would be futile to grant him leave to amend.

These modifications do not constitute a change in the judgment.

Respondents' petition for rehearing filed on April 12, 2022 is denied.

_____

ROTHSCHILD, P. J.        CHANEY, J.        BENDIX, J.

Filed 3/29/22  Max v. 8E6 Corp. CA2/1

# NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

## IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

## SECOND APPELLATE DISTRICT

## DIVISION ONE

| | |
|---|---|
| DAVID MAX,<br><br>Plaintiff and Appellant,<br><br>v.<br><br>8E6 CORP. et al.,<br><br>Defendants and Respondents. | B307406<br><br>(Los Angeles County<br>Super. Ct. No. 19STCV11560) |

APPEAL from orders of the Superior Court of Los Angeles County, William F. Fahey, Judge.  Affirmed in part and reversed in part.

Rogari Law Firm and Ralph Rogari for Plaintiff and Appellant.

Holland and Knight, Benjamin P. Pugh, David A. Robinson, Andrew M. Cummings for Defendant and Respondent 8e6 Corp.

Law Office of Stephen J. Riggs and Stephen J. Riggs for Defendants and Respondents George Shih, Frank Wood, Rodney Miller, Mahendra Vora, and Vora Ventures, LLC.

Appellant David Max challenges the trial court's order requiring him to post a bond under Corporations Code[1] section 800 and the ultimate dismissal of his lawsuit after the court sustained, without leave to amend, a demurrer to Max's complaint against 8e6 Corp. (8e6), 8e6 agents George Shih, Frank Wood, Mahendra Vora, and Rodney Miller (the individual respondents), and several entities owned or controlled by the individual respondents.[2]

Max's complaint alleges three causes of action:  a derivative breach of fiduciary duty cause of action regarding the individual respondents' improper use of corporate funds to pay their legal fees in both this and a previous lawsuit; an individual cause of action to recover the attorney fees Max incurred in a previous lawsuit seeking inspection of 8e6 corporate records; and a "mixed" cause of action containing both an individual fraud claim and a derivative breach of fiduciary duty claim.  The court, pursuant to section 800, required Max to post a bond as a condition of proceeding with his derivative cause of action and "mixed" cause of action.  Max contends this was error.  Specifically, he contends that the court erred in applying section 800 to the mixed cause of action, because section 800 only applies to derivative claims.  But as pleaded, the mixed cause of action included a derivative claim that was subject to bonding.  In response to the bond motion, Max did not request

---

[1] Unless otherwise indicated, all statutory references and citations are to the Corporations Code.

[2] These entities are Vora Ventures LLC, Darwin Group LLP, Secret Communications II LLC, Log-On Darwin LLC and Darwin Filter.

leave to amend or identify the portion of the mixed cause of action that constituted an individual claim, nor did he request the ability to prosecute such an individual claim without posting a bond. Instead, Max appears to have argued that the mixed cause of action contained no derivative claim at all, a contention the court correctly rejected. The court was not required, sua sponte, to parse the mixed cause of action, particularly in a way contrary to Max's characterization of it. On the record before us, the court correctly required Max to post a bond in order to proceed with the mixed cause of action.

In addition, Max contends that section 800 cannot apply to his derivative cause of action regarding the individual respondents' use of corporate funds to pay their legal fees, because the individual respondents did not post an adequate undertaking pursuant to section 317, subdivision (f), before the corporation advanced those fees. This argument is unpersuasive. The lack of an undertaking does not necessarily establish that the indemnification cause of action would benefit the corporation, as Max argues. Indeed, in the earlier case in which the individual respondents incurred the majority of the attorney fees at issue, the individual respondents prevailed, entitling them to indemnification by 8e6 and obviating the need for an undertaking. Accordingly, we conclude that the trial court did not err in granting the bond motion as to either the derivative cause of action or mixed cause of action.

Max also argues that, because he timely filed a purported amended complaint before the hearing on the demurrer to the original complaint, the court acted beyond its authority in ruling on the demurrer to the original complaint. We disagree. Because the court's bond order correctly stayed the action as to the claims

3

he sought to amend, he had no right to file an amended complaint without leave of court.

Max next contends that the court erred in sustaining, without leave to amend, respondents' demurrer to all three causes of action and dismissing the complaint with prejudice. We conclude that the court did not err in sustaining the demurrer. As to the two causes of action that required a bond, the court correctly dismissed them for failure to post one. As to Max's individual cause of action seeking the attorney fees he incurred in a previous lawsuit, the court correctly concluded Max had failed to state a cognizable cause of action.

The court, however, abused its discretion in denying Max leave to amend the mixed cause of action to separately state an individual fraud claim.[3] An individual fraud cause of action would not require a bond, and would not fail to state a legally cognizable claim on any other basis raised in the demurrer. Accordingly, we reverse in part with instructions to the trial court to allow Max to amend his complaint to state only such a claim.

---

[3] Max's notice of appeal lists not only the bond order and order sustaining the demurrer and dismissing the complaint, but also a "post[-]dismissal order" in a related case, Los Angeles Superior Court case No. 19STCV30623, "staying the determination of . . . Max's motion for attorney fees filed July 9, 2020." On February 1, 2022, Max requested his appeal from this order be dismissed. We hereby grant the request.

4

# FACTUAL ALLEGATIONS AND PROCEDURAL HISTORY

## A. Underlying Factual Allegations

The complaint alleges, and we accept as true for the purposes of our demurrer analysis (see *Small v. Fritz Companies, Inc.* (2003) 30 Cal.4th 167, 171 (*Small*)), the following facts:

### 1. *1996–2006: Formation and Initial Funding of 8e6*

Michael Bradshaw and respondent George Shih formed 8e6 to develop and market filtering software. In 1996, Max became one of the company's first common shareholders. The company obtained approximately $1.5 million in friends and family investments, and in 1998 began raising venture capital. Respondents Frank Wood and Mahendra Vora led a venture capital group that invested $6.5 million in 8e6 in exchange for class C preferred stock.

### 2. *2006-2008: The Individual Respondents Mislead Shareholders Regarding 8e6's Financial Health and Prospects*

Between 2006 and 2008, Wood, Vora, and Shih misled shareholders about 8e6's ongoing operations, financial health, and future prospects, and concealed material information about the company. The 2006 annual report to shareholders, authored by Shih, represented that 2006 had been an " 'extraordinary year' with some of the greatest accomplishments in the history of the company." According to the report, "virtually every month in 2006 was a record month for sales," "market share [was increased] by adding 300 new customers and 1.5 million seats" and 2007 was expected to be "an even stronger year of growth and accomplishment."

In truth, in 2006, "the cash generated from operations was not sufficient to cover expenses." "The company was struggling to continue its operations" and respondents Wood and Vora, through their owned and controlled entities Secret Communications and Vora Ventures, LLC had lent 8e6 millions of dollars "and were looking to exit the company." These loans were not disclosed to Max or other shareholders.

The annual report for 2007 painted a similarly positive picture of 8e6's finances and operations. Specifically, it represented that "every month in 2007 was a record sales month, and that cash flow went from a negative $3.9 million in 2006 to a positive $3 million in 2007." In truth, the cash generated by operations was again insufficient to cover expenses, and the company was still struggling to continue operations. The annual report also failed to disclose that Wood and Vora, through their controlled entities, had lent the company "more than $2.5 million at very high interest rates."

3. *October 2008: The Individual Respondents Conceal Information Regarding the Marshal8e6 Inc. Transaction*

In October 2008, the individual respondents informed Max that the board and a majority of shareholders had authorized the sale of 8e6's filtering business to a newly formed entity, Marshal8e6 Inc. (M86), in exchange for stock. M86 would include the consolidated businesses and assets of 8e6 and a company called Marshal Group, as well as outside capital investment.

In "written communications dated [October 18, 2008] and circulated to common shareholders," respondents indicated that the new entity would be worth $90 million, that 8e6 would have a 42 percent interest in the entity, and that "the new entity had

6

refinanced the existing debt of 8e6 and Marshal Group, including shareholder loans, which resulted in the new company carrying $5 million less debt." The individual respondents concealed that all third party refinancing had actually fallen through. They further "concealed that [M86] was assuming the debt obligations 8e6 owed to Wood and Vora," and that Wood and Vora had "secured repayment of the debt by preferred stock options in the new company," and "[c]onsequently, . . . 8e6's interest in the new entity [was] less than 46 [percent and] the interests of . . . Wood and Vora were ahead of 8e6's interests."

4. **2012: The Individual Respondents Conceal Information Regarding the Trustwave Transaction**

After the transfer of 8e6's filtering business to the new M86 entity, respondents Shih, Wood and Vora accepted director or officer positions in M86 and continued as directors of 8e6. Shih continued as its CEO as well.

In early 2012, Shih, Wood, and Vora approved the sale of 8e6's stock in M86 to Trustwave, in exchange for stock in Trustwave. The shareholders report through which Max learned of this transaction was misleading and did not disclose that 8e6's interest in M86 had declined from 46 percent to 17 percent. "As part of the Trustwave transaction, the secret preferred stock interests Wood and Vora . . . held were converted into common stock in Trustwave," giving "Wood and Vora, and their entities, even more profit at the expense of 8e6." Specifically, "[t]he $2.4 million debt interests that were concealed in 2008 . . . [became] a stock interest in Trustwave worth more than $6.5 million." None of this was disclosed to shareholders, including Max, despite Max's efforts to obtain "additional

7

information about the transaction with Trustwave and value of 8e6's holdings from . . . Wood, Vora and Shih."

**5.** ***2015: The Individual Respondents Sell the Business to Singtel***

In 2015, a company named Singtel purchased Trustwave in a transaction approved by the individual respondents. "[Max] requested information from [the individual respondents] about the amount of money 8e6 was due from Singtel and how the receipt of that money would affect his investment," but to no avail.

**6.** ***December 2016: Max Sues 8e6 and the Individual Respondents for the First Time***

On December 28, 2016, Max filed his first lawsuit (*Max v. Shih et al.* (Super. Ct. L.A. County, 2019, No. BC645117) (*Max I*)) against 8e6, Shih, Wood, Rodney Miller, Vora, Vora Ventures, LLC and others (the *Max I* defendants). In *Max I*, Max alleged three causes of action: (1) failure to permit inspection of books and records; (2) breach of fiduciary duty; and (3) conversion. The factual allegations in the complaint focused on how, beginning in 2012, the *Max I* defendants failed to obtain a fair market value for 8e6's stock in the transaction between M86 and Trustwave by structuring that transaction to benefit the *Max I* defendants and preferred shareholders above the interests of common shareholders. Max also alleged the *Max I* defendants further breached their fiduciary duties and converted 8e6's assets by wrongfully distributing the proceeds from the 2015 sale of Trustwave to Singtel to themselves and preferred shareholders of 8e6.

8

### 7. *2018: Max Learns of the Individual Respondents' Misleading and False Statements Regarding the M86 Transaction*

In 2018, through discovery in *Max I*, Max learned of the individual respondents' misleading statements regarding, and concealment of facts relevant to, the M86 transaction in 2008. Max asked the trial court for leave to amend his complaint in *Max I* to assert claims based upon the evidence of this newly-discovered misconduct by the *Max I* defendants, but the court denied leave to amend.

## B. Relevant Procedural History in *Max I*

Max initially named 8e6 as a defendant in *Max I*, but for reasons that are not clear on the current record, voluntarily dismissed it as a defendant on July 1, 2017. As a result, Max voluntarily dismissed in its entirety his section 1601 cause of action seeking inspection of corporate records, as the corporation was the only defendant against whom that cause of action was alleged.

Thereafter, in April 2019, the trial court granted summary judgment in favor of the remaining defendants in *Max I*. At that point in the litigation, the only remaining claim was a breach of fiduciary duty claim against the individual defendants. This ruling was ultimately upheld on appeal in an unpublished decision of this court. (*Max v. Shih* (Nov. 30, 2020, B301010) [nonpub. opn.].)

## C. Complaint in the Instant Action

Shortly before the court granted summary judgment in favor of the defendants in *Max I*, Max filed a new lawsuit—the

action against respondents underlying this appeal—alleging three causes of action:  the first for "fraud and breach of fiduciary obligations" (the fraud/breach of fiduciary duty cause of action), the second requesting the attorney fees Max incurred in connection with his inspection of corporate records claim in *Max I* (the attorney fees cause of action) and the third, styled as a "derivative action for breach of fiduciary duty," challenging the individual respondents' improper use of corporate funds to pay their legal fees in *Max I* (the indemnification cause of action).

The complaint alleges that the individual respondents' misrepresentations and nondisclosures regarding the M86 transaction breached their fiduciary duties and were intended "[t]o induce [Max] and other stockholders in the company to remain shareholders and not exercise redemption rights" under which "minority shareholders like [Max]" could require 8e6 to "purchase their common shares at fair market value."  It also alleges that Max "relied" on these misrepresentations and nondisclosures "in remaining a shareholder and not exercising his redemption rights" following the M86 transaction, and that, absent individual respondents' conduct, Max would have required respondents to redeem his shares in October 2008 at fair market value.

The complaint further alleges that, as a result of the alleged fraud and breaches, instead of receiving the 2008 fair market value of his shares, Max now holds stock in a company that is "worthless."  As to why the stock is worthless, the complaint alleges that, from 2008 to 2012, "the value of 8e6's stock in [M86] [s]teadily declined" due to "bad management" and because "Wood and Vora put their own interests in securing a return on the undisclosed debt interest they had taken in

10

[M86] ahead of the interests of 8e6 and its shareholders." In addition, "in breach of their fiduciary duties they took no action to stem the losses [to the company] and failed to perform their obligation to keep 8e6's shareholders advised of its financial condition." Further, in connection with the Trustwave and Singtel transactions between approximately 2012 and 2015, "[a]s set forth in the . . . related lawsuit, [the individual respondents] continued to conceal and fail to disclose material information to [Max] and ultimately caused 8e6 to become bankrupt, and Max's shares to become worthless by distributing all the funds received from Singtel to the preferred shareholders of the company and themselves to pay for the expenses of their unlawful actions."

The complaint further alleges that these same fraudulent acts and breaches of duty allowed certain respondents to be unjustly enriched. Specifically, through the Trustwave transaction, certain respondents were able to obtain "profit at the expense of 8e6." Thus, the fraud/fiduciary duty cause of action in the complaint sought both damages to recover Max's personal losses and disgorgement (from certain respondents) of the $6.3 million with which they had unjustly enriched themselves.

The attorney fees cause of action alleges that, in 2015, Max made multiple demands under section 1601 to inspect corporate documents in connection with the Singtel transaction, with which 8e6 unreasonably refused to fully comply. The complaint acknowledges that "after court orders [*in Max I*] compelling the production of [8e6's] records, . . . 8e6 began making its books and records available to Max." This cause of action thus does not seek

11

inspection of records, but only seeks to recover attorney fees and costs Max incurred in connection with *Max I*.

Through the indemnification cause of action, Max sought recovery on behalf of the corporation based on the individual respondents "engag[ing] in self-dealing by using the remaining [corporate] funds to pay their [own] attorney fees and costs" in *Max I* in breach of their fiduciary duties to the company. The complaint also alleges the individual respondents did not provide "an undertaking that would reimburse it for all sums that were paid on their behalf." The indemnification cause of action sought to recover, on behalf of the corporation, all legal fees the corporation has paid and "continues to pay" on the individual respondents' behalf.

## D. Procedural Background in the Instant Action

### 1. *Respondents' Section 800 Bond Motion*

Respondents did not answer the complaint in this action, and instead timely moved to require Max to post a bond pursuant to section 800.

#### a. *Section 800*

Section 800 provides that, "within 30 days after service of summons upon the corporation or [an officer or director defendant]" in a shareholder derivative suit, "the corporation or the defendant may move the court for an order, upon notice and hearing, requiring the plaintiff to furnish a bond" (§ 800, subd. (c)), based, inter alia, on "there [being] no reasonable possibility that the prosecution of the cause of action alleged in the complaint against the moving party will benefit the corporation or its shareholders." (§ 800, subd. (c)(1).) If the court finds the moving party has made the requisite showing

12

to support such a request, the court "shall fix the amount of the bond, not to exceed fifty thousand dollars ($50,000), to be furnished by the plaintiff for reasonable expenses, including attorneys' fees, which may be incurred by the moving party and the corporation in connection with the action, including expenses for which the corporation may become liable pursuant to Section 317." (§ 800, subd. (d).)  Section 317 expenses are those a corporation may incur by indemnifying corporate officers and directors named as defendants in an action "by reason of the fact that [they] [are] or [were] an agent of the corporation . . . for expenses actually and reasonably incurred by that person in connection with the defense or settlement of the action if the person acted in good faith, in a manner the person believed to be in the best interests of the corporation and its shareholders." (§ 317, subd. (c) [permitting such recover in actions "by or in the right of the corporation"]; *id.*, subd. (b) [permitting the same recovery, as well as recovery of "judgments, fines, settlements" in a proceeding other than an action "by or in the right of the corporation"].)

If a court grants a section 800 motion for a bond, prosecution of the plaintiff's action is automatically stayed until 10 days after the motion is fully "disposed of" (§ 800, subd. (f)), meaning the plaintiff either posts the bond, or properly dismisses the derivative causes of action that are the subject of the motion. (See *Woodman v. Ackerman* (1967) 249 Cal.App.2d 644, 651 (*Woodman*).)

### b.  *Respondents' Motion*

Respondents' section 800 bond motion argued that Max's fraud/fiduciary duty and indemnification causes of action are of questionable merit and derivative, and requested that the

13

court order Max to post a $50,000 bond "as a condition to Max's further prosecution of this derivative action."  (Capitalization omitted.)

Max raised with opposing counsel that, although respondents had indicated the corporation had been advancing the individual respondents' legal expenses since *Max I*, respondents had not included in their bond motion any mention that the individual respondents had made the undertaking described in section 317, subdivision (f).  Section 317, subdivision (f) permits a corporation to advance the costs of defending an agent in a lawsuit, upon receipt of an "undertaking by or on behalf of the agent to repay that amount if it shall be determined ultimately that the agent is not entitled to be indemnified as authorized in this section."  (§ 317, subd. (f).)  Respondents provided Max with documents signed by all individual respondents in August 2017 (in connection with *Max I*), entitled "request for advancement of expenses and undertaking to repay advanced expenses."  (Boldface & capitalization omitted.)  Each of these provided, in pertinent part: "I hereby request that the company advance such expenses that I incur in connection with defending the action [*Max I*] ('advanced expenses') or that the company pay such advanced expenses directly.  In connection with this request, I hereby undertake to repay the advanced expenses if it is ultimately determined that I am not entitled to indemnification under the California Corporations Code, the company's articles or bylaws, or otherwise."  (Capitalization omitted.)

On February 5, 2020, the court granted respondents' section 800 bond motion and "ordered [Max] to post a bond in the amount of $50,000.00."  The court's minute order (the bond

14

order) further instructed that "[t]he parties may meet and confer regarding a . . . stipulation and (proposed) order re[garding] dismissal of claims" and "[i]f the parties are unable to agree to a stipulation and (proposed) order, parties may file and serve a properly noticed motion to be heard in this department."

### 2. *Max's Attempted Dismissal of Derivative Claims*

Max never filed a bond, nor did he seek leave to separate the derivative and individual claims in the fraud/fiduciary duty cause of action. Instead, eight days after the bond order, Max filed a "request for dismissal" form. (Boldface omitted.) This form contains the disclaimer that it "may not be used for dismissal of a derivative action." (Boldface omitted.) Nevertheless, Max used it to purportedly dismiss an action he described in an attachment to the form as follows: "To the extent plaintiff's first cause of action could reasonably be interpreted as including a derivative claim, a proposition which is denied, such derivative claim only is dismissed." (Capitalization omitted.) Max did not request dismissal of the indemnification cause of action, either via this form or any other means.

### 3. *Respondents' Demurrer and Max's Attempt to File an Amended Complaint*

On March 16, 2020, respondents filed a demurrer to Max's complaint. Max never filed an opposition to the demurrer. Instead, on June 17, 2020, Max purported to file a first amended complaint, as well as a notice declaring that, as a result of that amended pleading, the demurrer was moot. The amended complaint alleged the breach of fiduciary duty/fraud cause of action as two separate causes of action (one for breach of

15

fiduciary duty and one for fraud), and alleged with more specificity the deceptive conduct underlying the fraud cause of action.

The trial court ultimately determined that Max's purported amended complaint was "improperly filed" and an "attempt to circumvent the automatic stay" resulting from the bond order, and proceeded to rule on the demurrer to the original complaint. The court, however, considered Max's purported amended complaint as a proffer in support of Max's request that, should the court sustain respondents' demurrer, he be permitted leave to amend.

The court sustained the demurrer without leave to amend. The court did so with respect to the fraud/fiduciary duty and indemnification causes of action on the grounds that, per the bond order, they were derivative causes of action for which Max had not posted the required bond. The court sustained the demurrer to the attorney fees cause of action on the basis that it reflected "an attempt by Max to recover his attorney's fees from the earlier dismissed case, . . . [b]ut [section] 1604 does not permit the recovery of fees by filing a new case."

The court also denied Max's request for leave to amend on the basis that the purported amended complaint did not address the deficiencies the court had identified in the original complaint. The trial court thus dismissed the action with prejudice. The trial court also ordered Max's first amended complaint dismissed with prejudice. Max timely appealed.

16

## DISCUSSION

On appeal, Max challenges both the bond order and the dismissal following the demurrer ruling. Max challenges the dismissal on the broad basis that the court erred in refusing to consider his purported first amended complaint as the operative pleading. He also argues the court should not have sustained the demurrer for reasons specific to each cause of action.

We first address Max's arguments regarding the demurrer to the attorney fees cause of action. The parties agree that this cause of action is individual, and that Max did not need to post a bond to pursue it, but disagree as to whether it states a cognizable claim under section 1601.

Next, we address Max's arguments that the court erred in issuing the bond order. We then consider the court's refusal to treat Max's first amended complaint as the operative pleading.

We then address Max's arguments regarding the demurrer to the fraud/fiduciary duty cause of action and the indemnification cause of action, both of which the court dismissed based on Max's failure to post a bond.

### A. The Demurrer Ruling on the Attorney Fees Cause of Action

Section 1601 requires, inter alia, that a corporation make available for inspection by any shareholder the corporation's "accounting books, records, and minutes of proceedings" "upon the written demand on [a] corporation of any shareholder . . . for a purpose reasonably related to the holder's interests as a shareholder." (§ 1601, subd. (a)(1).) Section 1603 addresses the enforcement of this right by providing that, "[u]pon refusal of a lawful demand for inspection, the superior court of the proper

17

county . . . may enforce the right of inspection with just and proper conditions." (§ 1603, subd. (a).) Section 1604 addresses the recovery of attorney fees incurred by a shareholder seeking inspection of records through court proceedings as follows: "In any action or proceeding under Section 1600 or Section 1601, if the court finds the failure of the corporation to comply with a proper demand thereunder was without justification, the court may award an amount sufficient to reimburse the shareholder . . . for the reasonable expenses incurred by such holder, including attorneys' fees, in connection with such action or proceeding." (§ 1604.)

In *Max I,* Max sought inspection of 8e6 records based on his section 1601 right to do so. In the instant action, he seeks only to recover the attorney fees he incurred through these (ultimately successful) efforts in *Max I* to inspect 8e6 records. Respondents argue that although Max could have sought such attorney fees in *Max I*, section 1604 does not grant him a right to seek them in the instant action, because this action, unlike *Max I*, is not an "action or proceeding under Section 1600 or Section 1601." (§ 1604.) We agree.

The plain meaning of the phrase "action or proceeding under Section 1600 or Section 1601" is an action that seeks inspection of corporate records as permitted by those sections. The instant action does not do so. Thus, that section 1604 permits a plaintiff to recover attorney fees "[i]n any action . . . under Section 1600 or Section 1601" is inapplicable to the attorney fees cause of action. We note that section 1604 twice employs the phrase "action or proceeding under Section 1600 or Section 1601": Once in referring to the action in which the attorney fees at issue were incurred, and once in referring to

18

the action in which such fees may be recovered.  Were we to read section 1604 as requiring only that the fees be incurred in such an action, we would render superfluous the statute's second instance of the phrase.  In interpreting statutes, " 'a construction making some words surplusage is to be avoided.' " (*Steketee v. Lintz, Williams & Rothberg* (1985) 38 Cal.3d 46, 52.)

Max was entitled to seek attorney fees in *Max I*, chose not to do so, and instead voluntarily dismissed his section 1601 claim in that action.  He cannot recover those fees in this new action.  Further, Max has not identified how he could amend the complaint to address this deficiency, and the court thus correctly denied him leave to amend it with respect to the attorney fees cause of action.

### B.    The Bond Order

#### 1.    *The Purported Lack of An "Undertaking" by the Individual Respondents*

Max argues that the failure of the individual respondents to provide a valid undertaking in compliance with section 317, subdivision (f) prevented respondents from showing that there was "no reasonable possibility that the prosecution of the [indemnification] cause of action . . . [would] benefit the corporation or its shareholders."  (§ 800, subd. (c)(1).)  On this basis, Max argues the court erred in requiring respondents to post a section 800 bond to proceed with the indemnification cause of action.  We disagree.

Section 317, subdivision (f) provides that "[e]xpenses incurred in defending any proceeding [on behalf of a corporate agent] may be advanced by the corporation prior to the final disposition of the proceeding upon receipt of an undertaking

19

by or on behalf of the agent to repay that amount if it shall be determined ultimately that the agent is not entitled to be indemnified as authorized in this section." Max does not attempt to explain why the lack of a section 317, subdivision (f) undertaking provides a basis for concluding the indemnification cause of action benefits the corporation, or why substantial evidence does not support the court's conclusion to the contrary. (See *Olson v. Basin Oil Co.* (1955) 136 Cal.App.2d 543, 555 [applying substantial evidence standard of review to this issue].) Rather, Max argues that, because the indemnification cause of action seeks to recoup legal fees the corporation has "unlawfully advanc[ed]," the indemnification cause of action is *necessarily* in the corporation's best interest. We disagree. The corporation would not benefit from such an undertaking regarding the legal fees incurred in *Max I*, because the individual respondents prevailed in that action, and were therefore entitled to indemnification. (See § 317, subd. (d) ["[t]o the extent that an agent of a corporation has been successful on the merits in defense of any proceeding referred to in subdivision (b) or (c) . . . the agent shall be indemnified against expenses actually and reasonably incurred by the agent in connection therewith"].) And Max neither offers any argument nor identifies any allegations suggesting that, as the indemnification cause of action alleges, the individual respondents breached their fiduciary duties to the company by using corporate funds to pay the individual respondents' legal fees in the instant action. Therefore, even assuming, *arguendo*, that the individual respondents did not provide undertakings satisfying section 317, subdivision (f), Max has failed to "affirmatively demonstrate . . . through reasoned argument, citation to the appellate record, and discussion of

20

legal authority" that the trial court erred in concluding the indemnification cause of action was not reasonably likely to benefit the corporation. (*Bullock v. Philip Morris USA, Inc.* (2008) 159 Cal.App.4th 655, 685.) The lack of a section 317, subdivision (f) undertaking is thus not a basis on which Max can challenge the bond order. The court properly required Max to post a bond in order to proceed with the indemnification cause of action.

### 2. *Applicability of Section 800 to the Fraud/Fiduciary Duty Cause of Action*

Max next argues that section 800 does not apply to the fraud/fiduciary duty cause of action because it is not a shareholder derivative action and contains, partially if not entirely, an individual claim for fraud. An action is derivative if it involves " 'injury to the corporation, or to the whole body of its stock and property without any severance or distribution among individual holders.' " (*Jones v. H. F. Ahmanson & Co.* (1969) 1 Cal.3d 93, 106.) "A personal claim, in contrast, asserts a right against the corporation which the shareholder possesses as an individual apart from the corporate entity." (*Denevi v. LGCC, LLC* (2004) 121 Cal.App.4th 1211, 1222.)

The fraud/fiduciary duty cause of action includes allegations describing two categories of conduct by the individual respondents: (1) breaches of fiduciary duties owed to the corporation and other misconduct and mismanagement that reduced the value of the corporation and shares therein, and (2) fraudulent nondisclosures and misrepresentations to Max and other minority shareholders that induced them not to sell back their shares following the M86 transaction. The first category of conduct is plainly conduct harming the corporation as a whole

21

and all shareholders equally.  The second category is conduct aimed at and uniquely injuring Max and the minority shareholders.  Only Max and other minority shareholders could have relinquished the opportunity to sell back their shares following the M86 transaction, and such forbearance did not harm the corporation.  Thus, Max alleges in the fraud/fiduciary duty cause of action *both* (1) a derivative claim for breaches of fiduciary duty owed the corporation *and* (2) a personal fraud claim based on concealment of material facts from Max and other minority shareholders.  This cause of action thus states a derivative claim (albeit in part), and the trial court did not err in concluding that, as pleaded, it was subject to section 800.

Max correctly points out that, as the California Supreme Court held in *Hagan v. Superior Court* (1960) 53 Cal.2d 498 (*Hagan*), when a complaint alleges a personal cause of action and a derivative cause of action in the same complaint, a court cannot impose a section 800 bond as a condition of prosecuting the personal cause of action.  (See *Hagan, supra,* pp. 502−503.) On appeal, Max argues that the court thus should have permitted him to continue to prosecute the individual fraud claim contained in the fraud/breach of fiduciary duty cause of action without posting a bond.  But it was not up to the court, on its own motion, to parse out the individual and derivative claims contained in the fraud/fiduciary duty cause of action.  It was up to Max to identify the individual fraud claim contained in the fraud/fiduciary duty cause of action and ask for leave to amend his complaint accordingly.  Max did not do so in his written opposition to the bond motion, and nothing in the record before us supports, nor does Max contend, that he did so at the bond hearing or at any

22

other time before the court ruled on the bond motion.[4]  To the contrary, the record suggests that he refused to even acknowledge that the fraud/fiduciary duty cause of action contained any derivative claim whatsoever.  Thus, the court did not err in imposing a section 800 bond requirement on the entirety of the fraud/fiduciary duty cause of action.

## C.  The Court's Refusal to Treat the Purported Amended Complaint as the Operative Pleading

Max argues that the court should not have ruled on the demurrer to the original complaint at all, because it was no longer the operative pleading.  Specifically, he argues Code of Civil Procedure section 472 affords him an absolute right to amend his original complaint within a certain time frame, with which his proposed amendment complied, and therefore Max's proposed first amended complaint superseded the original complaint.

Max's argument ignores that the section 800 bond order triggered a stay that prohibited him from " ' "prosecut[ing]" ' " his action—meaning " 'every step in an action from its commencement to its final determination' " (*Melancon v. Superior Court* (1954) 42 Cal.2d 698, 707–708)—until 10 days after the motion is "disposed of."  (§ 800, subd. (f).)  "The point at which the motion is 'disposed of,' or finalized, is not the time at which

---

[4] The record on appeal does not contain a transcript of the bond motion hearing.  It is Max's burden as the appellant to provide an adequate record to support his claim for relief, and to seek augmentation thereof, should "a clerk or reporter omit[ ] a required or designated portion of the record."  (Cal. Rules Court, rule 8.155(b)(1); see *id.*, rule 8.155(b)(2).)

the court rules that security is to be furnished, but rather occurs when the plaintiff either furnishes the required security or refuses to do so and suffers a dismissal." (*Woodman, supra,* 249 Cal.App.2d at p. 651; accord, *Melancon, supra,* at pp. 707–708.) Neither had occurred at the time Max attempted to "prosecute" his action by filing an amended complaint (and, for that matter, at the time the court ruled on the demurrer to the original complaint).

As discussed above, Max did not argue in opposing the bond motion that some portion of the fraud/fiduciary duty cause of action should be exempt from any section 800 bond order and resulting stay. Absent such a request and a related request for leave to amend, the mere presence of an individual claim alongside a derivative claim in the fraud/fiduciary duty cause of action did not exempt that cause from the stay imposed by the bond order.[5] Max thus could not amend it as of right, and the court properly rejected Max's purported amended complaint as violating the stay.[6]

---

[5] Max does not argue that his filing of the purported amended complaint constituted an effort to prosecute the one cause of action in the complaint unaffected by the bond order (the attorney fees cause of action) and stay. (See *Hagan, supra,* 53 Cal.2d at pp. 502–503.)

[6] Max argues that the bond order was disposed of on February 5, 2020 (i.e., before Max attempted to file an amended complaint) because the parties filed a stipulation stating, "Since the bond motion was disposed of on February 5, 2020, the due date for parties served with the complaint to respond thereto is February 18, 2020." (Capitalization omitted.) But the parties cannot change the definition of " 'disposed of' " via stipulation.

24

## D. The Demurrer Ruling on the Indemnification Cause of Action

Max next argues that the court erred in dismissing the fraud/fiduciary duty and indemnification causes of actions, because these dismissals were based on Max's failure to post a bond, which Max should never have been required to do.

As discussed above, the court correctly required Max to post a bond in order to proceed with the indemnification cause of action, which Max acknowledges was entirely derivative. After Max failed to do so, section 800 required the court to dismiss it. (See § 800, subd. (d) ["[i]f the court . . . makes a determination that a bond shall be furnished by the plaintiff as to any one or more defendants, *the action shall be dismissed* as to the defendant or defendants, unless the bond required by the court has been furnished within such reasonable time as may be fixed by the court," italics added].)

Further, Max has not identified how he could amend the complaint to avoid this outcome. The proposed first amended complaint, which the court considered as a proffer as to how Max would amend, if granted leave, makes no new allegations relevant to that claim. Thus, the court correctly denied him leave to amend that cause of action.

## E. The Demurrer Ruling on the Fraud/Fiduciary Duty Cause of Action

As we discuss in part B.2., *ante*, the court correctly required Max to post a bond in order to proceed with the fraud/fiduciary duty cause of action, given Max's failure to request that the court permit him to proceed separately with the individual fraud claim contained therein. Accordingly, Max's failure to file a bond or

25

request leave to amend required the court to sustain the demurrer to that cause of action.

Nonetheless, Max could have addressed this and all other deficiencies in his complaint by amending it to allege *only* the individual fraud claim contained in the fraud/fiduciary duty cause of action. The court should have granted Max leave to amend in this limited way. We acknowledge Max's proffer as to how he might amend did not jettison the derivative breach of fiduciary duty claim from the fraud/fiduciary duty cause of action, but rather alleged it as a separate cause of action alongside a standalone individual fraud cause of action. Still, this proffer sufficiently identified for the court how Max could separately state an individual claim for fraud that would not be barred by the bond order and Max's failure to post a bond.[7]

We also disagree with respondents' merits-based arguments as to why permitting Max leave to amend the

---

[7] We disagree with respondents' argument that the continuing request for disgorgement in the proffered amended complaint renders the proposed individual fraud cause of action derivative. Disgorgement is a remedy, not a type of injury or wrong. Nor does requesting disgorgement as a remedy change the nature of the injury or wrong to be remedied. (See *Korea Supply Co. v. Lockheed Martin Corp.* (2003) 29 Cal.4th 1134, 1145 [disgorgement " 'may compel . . . surrender of all profits . . . whether those profits represent money taken directly from persons who were victims of the [challenged] unfair practice' "].) We need not and do not consider whether Max may obtain disgorgement as a remedy for his individual fraud cause of action. We conclude only that his request for such a remedy does not change the individual nature of that cause of action.

fraud/fiduciary duty cause of action in this manner would be futile.

First, respondents argued below that the applicable three-year statute of limitations bars Max's proposed individual fraud cause of action. But such a cause of action is "not deemed to have accrued until the discovery, by the aggrieved party, of the facts constituting the fraud." (See Code Civ. Proc., § 338, subd. (d); see *Fox v. Ethicon Endo-Surgery, Inc.* (2005) 35 Cal.4th 797, 807 [limitations period begins when cause of action accrues, and " 'discovery rule' . . . postpones accrual of a cause of action until the plaintiff discovers, or has reason to discover, the cause of action"].) The complaint alleges that Max was unaware of the alleged fraudulent conduct until August 2018, an allegation we must accept as true at the demurrer stage. (See *Zelig v. County of Los Angeles* (2002) 27 Cal.4th 1112, 1126.) Respondents do not identify any basis on which we could conclude that Max could or should have made this discovery earlier. (See *Fox, supra*, 35 Cal.4th at p. 807.)

Respondents next argue that the proposed individual fraud cause of action does not allege fraud with sufficient specificity. Respondents note that a stockholder plaintiff asserting an individual claim for fraud based on actions affecting all shareholders must plead unique *personal* reliance with specificity. (See *Small, supra*, 30 Cal.4th at pp. 172, 184–185 [court correctly sustained demurrer to minority shareholders' individual fraud claim because minority shareholders did not specifically allege personal reliance on inaccurate press releases and quarterly reports circulated to all shareholders].) But the purported amended complaint does not allege fraudulent misrepresentations to all shareholders—only to minority

27

shareholders like Max. As such, Max need not plead reliance with heightened specificity in order to "stand out from the mass of stockholders who rely on the market." (*Id.* at pp. 184–185.)

Respondents next argue that the individual fraud cause of action Max proposes would be barred by *Max I*, in which Max's fraud claim was dismissed following a demurrer and he declined to amend. In order for the doctrine of res judicata to bar " ' "either an entire cause of action or one or more issues" ' " the " ' "claim or issue raised in the present action [must be] identical to a claim or issue litigated in a prior proceeding." ' " (*Hong Sang Market, Inc. v. Peng* (2018) 20 Cal.App.5th 474, 489.) "California courts apply the 'primary rights' theory in assessing whether two proceedings involve identical causes of action. [Citation.] '. . . The scope of the primary right . . . depends on how the injury is defined. A cause of action comprises the plaintiff's primary right, the defendant's corresponding primary duty, and the defendant's wrongful act in breach of that duty.' " (*Id.* at p. 490.) The fraud claim in *Max I* was based on the individual respondents' self-dealing with respect to the funds that 8e6 received from Singtel in late 2015 and the concealment of information in connection with the sale to Trustwave in 2012. It did not mention or involve the basis of the instant lawsuit: fraudulent misrepresentations regarding the M86 transaction in 2008. Thus, both the injury and the individual respondents' offending conduct at issue in the two fraud claims are distinct, and they do not involve the same primary right. Nor can respondents successfully argue that res judicata bars Max's currently proposed individual fraud claim because he could have included it in his original or first amended complaint in *Max I*. "[W]here it cannot be said that plaintiff knew or should have

28

known of the claim when the first action was filed, res judicata should not bar the second action." (*Allied Fire Protection v. Diede Construction, Inc.* (2005) 127 Cal.App.4th 150, 156.) Max alleges he did not discover and could not have discovered respondents' misrepresentations regarding the M86 transaction until after he filed his complaints in *Max I*. At the demurrer stage, we must accept these allegations as true.

Finally, respondents argue that Max's proposed individual fraud cause of action must fail because it is based on fraud perpetrated in connection with the M86 transaction, and "the exclusive remedy of a shareholder claiming damages due to a corporate merger is the appraisal process pursuant to . . . section 1300 et seq." But appraisal is not the exclusive remedy when a plaintiff alleges, as does Max, "that [he] would have exercised [his] dissenters' rights had defendants timely disclosed their alleged [misconduct]." (*Singhania v. Uttarwar* (2006) 136 Cal.App.4th 416, 434 [concluding appraisal was the exclusive remedy and noting plaintiff had made no such allegations or arguments].) Under the very authority on which respondents rely, "only, or at least, where the plaintiff was 'aware of all facts leading up to his cause of action for alleged misconduct in connection with the terms of the merger prior to the time the merger was consummated but deliberately opted to sue for damages instead of seeking appraisal, [does] section 1312, [subdivision] (a) act[ ] as a bar.' " (*Busse v. United PanAm Financial Corp.* (2014) 222 Cal.App.4th 1028, 1045, quoting *Steinberg v. Amplica, Inc.* (1986) 42 Cal.3d 1198, 1214; accord, *Singhania*, *supra*, 136 Cal.App.4th at p. 434 [noting in dicta that "an action for damages might be available where fraud or breaches of fiduciary duty cause a shareholder to go along with

a reorganization, based upon misinformation or nondisclosures material to a decision whether to exercise dissenters' rights, and the shareholder would have cashed out as provided by dissenters' rights law had the shareholder known the true facts"].)

Thus, the respondents' demurrer did not identify deficiencies in the Max's proposed individual fraud cause of action that would have justified denying leave to amend.[8]

---

[8] Max does not argue that the court erred in denying him leave to amend his complaint to assert an individual breach of fiduciary duty cause of action. Nor could he, as the breach of fiduciary duty cause of action included in the proposed amended complaint continued to allege breaches of fiduciary duties owed to all shareholders and the company, and was thus derivative. Our conclusion that the court improperly denied leave to amend the fraud/fiduciary duty cause of action is thus limited to the denial of an opportunity to assert an individual fraud claim, not an individual breach of fiduciary duty claim.

## DISPOSITION

The order granting respondents' section 800 bond motion is affirmed.  The judgment of dismissal is reversed and the court is to allow Max to amend his complaint to allege a stand-alone individual fraud claim.

The parties shall bear their own costs on appeal.

NOT TO BE PUBLISHED.


ROTHSCHILD, P. J.

We concur:


CHANEY, J.


BENDIX, J.

31